IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MEDIAWERKS PUBLISHING, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 4:20-cv-1399 |
| APEX RX SOLUTIONS, LLC and SOHAIL HASSAN. | ) ) **JURY DEMANDED** |
| Defendants. | ) ) ) |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW MEDIAWERKS PUBLISHING, LLC ("*MediaWerks*" or "*Plaintiff*") and hereby assert their Original Complaint against Defendant APEX RX SOLUTIONS, LLC ("*APEX*"), SOHAIL HASSAN ("*Sohail"* and, together with APEX, the "*Defendants*") and would respectfully show the Court as follows:

## I.  PARTIES

1. Plaintiff MediaWerks is a Delaware limited liability company with its principal place of business in Michigan. It may be served through the undersigned counsel of record.

2. Defendant APEX is a Texas corporation with its principal place of business in Harris County, Texas. It may be served through its registered agent, Sohail Hassan, 9100 Southwest Freeway, Suite 201, Houston, TX 77074.

3. Defendant Sohail is a natural person and permanent resident of Texas. He may be served at 9100 Southwest Freeway, Suite 201, Houston, TX 77074 or wherever he may be found.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.00 for each of the claims pleaded by the Plaintiff. Plaintiff MediaWerks is comprised of sole member William Werkmeister whose permanent residence is in Belmont, Michigan, making MediaWerks a citizen of Michigan for diversity jurisdiction purposes. Defendant is wholly owned by the APEX Organization, Inc., a Texas corporation, making it a citizen of Texas for diversity jurisdiction purposes. Sohail is a resident and citizen of Texas.

5. Defendant APEX is subject to personal jurisdiction in Texas because it is a Texas limited liability company with its principal place of business in Texas and its member/manager is the APEX Organization, Inc., a Texas corporation. Sohail is also a resident and citizen of Texas and, therefore, subject to general jurisdiction in Texas.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because at least one Defendant resides in this District.

## III.   FACTS

7. MediaWerks has been working since February 2020 to source products for governments, healthcare workers, and grocers that are necessary to combat the COVID-19 pandemic.

8. A2A Integrated Logistics, Inc. ("*A2A*") is a defense and government contractor who controls (as of March 20, 2020) about 80% of the production capacity of a company called RNA Pharma ("*RNA*"), a licensed pharma company which has a production capacity of about 1.25 million units per week, at its 400,000 square foot facility in Blue Hills, IL. It now controls all the sanitizer production at the plant. A mutual acquaintance of MediaWerks and A2A, Dr. Ravi Reddy

("*Reddy*"), introduced Sohail, vice president of Defendant APEX to A2A, who subsequently entered into a non-circumvention agreement with A2A, RNA, and a company called PEAK MED Management, Inc. ("*Peak*"). The agreement (the "*A2A NCA*") was dated March 12, 2020 and prevented the parties to that agreement from directly working with each other's end users. MediaWerks did not become aware of the A2A NCA until April of 2020.

9. MediaWerks had also entered into a non-circumvention agreement with APEX (the "*MediaWerks NCA*") that prohibited APEX from directly contacting end-users sourced by MediaWerks. In addition, MediaWerks entered into consulting services agreements ("*MediaWerks Consulting Agreements*") wherein APEX would pay commissions to MediaWerks as soon as MediaWerks received funds from end-users sourced by MediaWerks. A material inducement for MediaWerks to enter the Consulting Agreements was APEX's affirmative representation—by and through Sohail—that APEX had control over production facilities and were ready, willing, and able to meet the delivery demands of the end users. But for that representation, MediaWerks would have used A2A as a vendor, which was the first vendor offered to them by Reddy and one of MediaWerks' associates, James Butler ("*Butler*") of F5 Financial, Inc. ("*F5*"). Similarly, if MediaWerks had known that APEX entered into a non-circumvention agreement with A2A, and was intent on breaching such agreement, MediaWerks would have used A2A, or another vendor, and not APEX.

10. On March 20, MediaWerks entered into an initial compensation agreement with APEX. MediaWerks' principal, William Werkmeister ("*Werkmeister*"), insisted the agreement be changed from the one provided by APEX, to ensure payment of commissions was due, pro-rata, based on the payments received by APEX, at the time payment was made, not upon delivery of the product. Werkmeister explained to Sohail at the beginning of the relationship that his value

was in bringing credible clients, with large orders, who could pay at least part of their order upfront, and it was Sohail's responsibility to ensure the product was produced. All subsequent agreements were also contingent upon client payment, not delivery or final production.

11. On the weekend of March 14, 2020, Werkmeister connected with a long-time business associate, regarding a sanitizer order for an end user customer called SaveOn, a large grocery chain, through a logistics and sourcing company the GR8 Group, LLC / GR8 Seas Holding, Inc. ("*GR8*"). GR8—sourced by MediaWerks— through broker Jeremy Adamic (**"Adamic"**) placed a purchase order dated March 20, 2020 for delivery March 27, 2020 with APEX for 500,000 units of 4-ounce sanitizer and 500,000 units of 16-ounce sanitizer, at a total cost of $3,450,000.00. During the next few days, APEX was slow in providing necessary, requested information including label, adequate pictures, and a SKU/bar code, which combined with issues GR8 had in sending its wire due to banking limitations resulting from COVID, delayed payment several days. GR8 also later announced the intention to place recurring, monthly 1 million-unit orders for SaveOn and 1.5 million-unit orders for Office Depot.

12. On Sunday, March 22, 2020, Werkmeister was contacted by his Michigan state senator, Peter MacGregor, who had learned Werkmeister was helping governments and healthcare providers source COVID-19 related products. The State of Michigan ("*Michigan*") subsequently began the process on Monday, March 23, 2020 of purchasing 500,000 units of 16-ounce sanitizer with APEX through MediaWerks. Michigan signed a formal purchase order and wired a $810,000 (40% down payment) of the funds for their 500,000-unit order.

13. The week of March 23, 2020, Sohail indicated that APEX could no longer honor the Michigan or GR8 delivery dates. During a phone call with Reddy, on Wednesday March 25, 2020, Sohail indicated that the SaveOn order would ship, at the latest, on Thursday, April 2, 2020

at 5PM, but could be ready Wednesday, April 1, 2020.  Sohail told Werkmeister not to tell GR8 this.  GR8 repeatedly asked for a pickup time, as did Werkmeister, Butler, and Reddy of APEX, who refused to respond, so eventually Werkmeister relayed the discussed schedule to all relevant brokers and GR8.  Sohail immediately emailed all involved blaming overwhelmed production and chastising Werkmeister for quoting the time given.

14. After Michigan requested information on production delays, on April 1, 2020, Sohail sent an email to Jared Ambrosier of Michigan, indicating that 200,000 units would be delivered the week of April 6, 2020, 150,000 units the week of April 13, 2020, and 150,000 units, the week of April 20, 2020.

15. Michigan agreed on Monday, April 6, 2020 to accept 200,000 units on Wednesday April 8, 2020 and then 150,000 units each of the following two weeks, and roll the payment for 40% upfront on 500,000 to cover the 200,000 because Michigan wanted to accept delivery before paying more.  APEX agreed and payment was made in full on the first 200,000 units.  Per the MediaWerks Consulting Agreements, APEX agreed to wire MediaWerks a $60,000.00 commission on the first 200,000 units that same day, Monday, April 6, 2020.  APEX then sent a second email on Tuesday, April 7, 2020 stating they it would wire the money, but did not.  On the morning of Wednesday, April 8, 2020, APEX told Michigan that they would need to delay again delivery again, the day the first 200,000 were scheduled to be delivered.  Safeer Hassan ("*Safeer*"), Sohail's, brother, engaged in a phone call with Werkmeister and Butler late in the afternoon on April 8, 2020 to discuss the delays.  He also stated APEX would not pay the promised commissions on the Michigan orders, now claiming they were not due since the order was not yet complete.  Werkmeister fervently objected to this change of position and disregard for the MediaWerks' Consulting Agreements.

5

16.     During the week of March 15, 2020, the Meijer Corporation's ("*Meijer*") purchasing manager connected with Werkmeister about placing an order for Meijer, which was originally supposed to be 5 truckloads of 16-ounce sanitizer bottles, with an additional 10 truckloads to follow over the subsequent next 2 months.  APEX delayed accepting the order when presented by MediaWerks because of its ongoing issues fulfilling orders.  Werkmeister urged APEX not to accept the order until it could timely satisfy Meijer's demand for product.  APEX later accepted an order from Meijer on March 27, 2020 for 3 truckloads of 16oz sanitizer without Werkmeister involved in the conversations, and at a new price (without Werkmeister's approval) for an original ship date of April 3, which was pushed backed several times, and is now slated for April 23, 2020 as of the date of this filing, to be processed through a different facility (not RNA).  This was in direct contravention of the MediaWerks NCA.  Nevertheless, and just like with the Michigan deal, Sohail emailed Werkmeister that APEX would wire commission payment on the Meijer deals.

17.     On Wednesday, April 8, 2020, a GR8 client went to RNA's Blue Hills, IL facility to pick up 103,400 units of 16-ounce sanitizer, at the direction/instruction of Sohail.  The RNA factory indicated that they did not have a pickup window, and that no sanitizer was slotted for them, contrary to what Sohail had informed GR8.  As discussed below, MediaWerks would later learn that this was completely fraudulent.  GR8 has claimed damages of $20,000 in wasted logistics/trucking expenses.

18.     During the prior weeks of delayed performance, APEX had given MediaWerks and its associates a litany of ever-changing excuses, including: (1) that since payment by Michigan and GR8 was delayed, other clients, including a state, had slipped in front of Plaintiff in priority; (2) that there were issues acquiring ethanol; (3) that there were issues acquiring bottles; (4) that

production was backed up due to increased demand, and, finally (5) that RNA was unethical and lying to APEX. On the afternoon of April 8, 2020, one of MediaWerks' associates, Butler, contacted A2A, who produces at the same plant as RNA, to ask what the issues at the plant were. A2A disclosed to Butler that it had learned from RNA that: (1) APEX had not followed the RNA process to properly file and confirm an order, including finalizing a production contract and schedule; and (2) that even if APEX had followed the proper process, that the order would not have been processed since APEX was breaching the multiparty NCA including A2A, RNA, and APEX.

19. During the April 8 conversation with Butler, A2A also indicated that APEX had used a company called "Curve Global Healthcare," which may not actually exist, run by an individual named Akram Jazara, to attempt to further circumvent A2A and obtain product from RNA. Later in the week, Safeer provided copies of supposed wire instructions from Akram Jazara's personal account to RNA, as evidence of payments made on behalf of APEX to RNA for the GR8, State of Michigan, and Meijer orders.

20. On the evening of Friday, April 10, 2020, due to APEX's unethical conduct and material breaches of its obligations to deliver product on time, F5 convinced GR8 and MediaWerks convinced Meijer and Michigan to shift production to A2A, which A2A had agreed to process in email communications, following their duty as an agent of GR8, Meijer, and Michigan. On that same evening, APEX, by and through Hassan, violated the MediaWerks NCA and made offers to process sanitizer for GR8 at a different cost and different plant. Both Meijer and the State of Michigan also indicated that APEX communicated with them following the April 10, 2020 to attempt retain the existing order in the case of Michigan, and to both retain the existing order and take on new business in the case of Meijer. Werkmeister sent an email to Sohail on the evening

of April 10, 2020, and on multiple occasions thereafter, demanding that he and APEX cease communications with all MediaWerks clients per the MediaWerks NCA.

21. Meijer and Michigan both indicated, in writing, that they would shift production to A2A the evening on April 10, 2020. Then, on Saturday, April 11, 2020, Michigan indicated it would not shift back to A2A, and was staying with APEX, referencing a lawyer that APEX retained in the email communication. On the afternoon of Saturday, April 11, 2020 after Werkmeister discussed the issues with James Colangelo and Jared Ambrosier, procurement representatives for Michigan, they stated they decided to go with neither A2A or APEX, and would demand a refund from APEX for non-performance. Meijer also shifted its position and indicated to Werkmeister the week of April 13, 2020 that it was considering processing the remaining 10 truckloads with APEX—not A2A—as well as the 3 original truckloads.

22. On April 17, 2020 the Michigan procurement managers wrote Werkmeister indicating that Michigan had still not been refunded their $810,000, expected on Monday, April 13, 2020. Werkmeister wrote Sohail, carbon copying the procurement managers, demanding APEX return the funds immediately. Sohail did not respond to either Werkmeister or the procurement managers. On April 18, 2020, Michigan sent notice to APEX, and all brokers involved in the transaction, that it would refer all involved to both the FBI and Michigan's Attorney General's office, if Sohail did not offer a reply to its April 17 follow-up demand for a refund by the close of business on April 18, 2020.

23. As a result of the Defendant's conduct, Plaintiff has been severely damaged as follows:

    a. Total commission earned and payment not received:

(1) $60,000.00 to MediaWerks for the Michigan final payment on Monday, April 6; and

(2) $13,478.40 for the initial Meijer payment on April 6, and $13,478.40 for the final Meijer payment on the 3-truckload order.

b. Total commission which would have been earned by MediaWerks on received POs from credible purchasers had APEX not 1) misrepresented its relationship with RNA and 2) violated the MediaWerks NCA:

(1) An additional $90,000.00 to MediaWerks for the completion of an additional 300,000-unit order of 16-ounce sanitizer for Michigan, had completion not been interrupted by APEX's fraud, misrepresentations, and circumvention of the MediaWerks NCA.

(2) An additional $89,856.00 to MediaWerks for the completion of an additional 10 truckloads of 16-ounce sanitizer for Meijer, had completion not been interrupted by APEX's fraud, misrepresentations, and circumvention of the MediaWerks NCA.

c. With respect to GR8:

(3) an additional $13,945.50 for final wire payment had the reduced order of approximately 103,400 units of sanitizer for GR8, but for APEX's fraud, misrepresentations, and circumvention of the MediaWerks NCA.

(4) an additional $102,109 had the full, original GR8 purchase orders been processed by APEX and not interrupted by APEX's fraud, misrepresentations, and circumvention of the MediaWerks NCA.

(5) an additional $420,000, had GR8 not retracted the Litezall/Promier purchase order from MediaWerks, to be processed through APEX, due to APEX's fraud, misrepresentations, and circumvention of the MediaWerks NCA.

(6) Additional profit due MediaWerks, had GR8 not retracted the promised 1 million unit per week future orders for a period of two months each from Werkmeister for GR8 clients SaveOn and Office Depot, due to APEX's fraud, misrepresentations, and circumvention of the MediaWerks NCA.

## IV. <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>

**Breach of Contract (against Defendant APEX)**

24. Plaintiff realleges all of the preceding allegations as if fully stated herein.

25. Plaintiff was ready, willing, and able to perform under the relative agreements (the MediaWerks NCA and MediaWerks Consulting Agreements). The agreements were valid and enforceable. Defendant was not excused from performing under the agreements. As a result of Defendant's breaches of the agreements, Plaintiff MediaWerks suffered damages in excess of $1,000,000.00.

26. In addition, Plaintiff seeks its attorneys' fees under the relevant contracts, common law, or equity. Plaintiff also seeks its costs and pre and post-judgment interest.

## COUNT II

### Fraud (against all Defendants)

27. Plaintiff realleges all of the preceding allegations as if fully stated herein.

28. Defendants made false statements of material fact by falsely representing to MediaWerks that it had dedicated production and existing production contracts at the RNA facility. These representations were made by Sohail Hassan during telephone conversations in March/April 2020 directly to Werkmeister and Butler, as well as through Reddy as an intermediary. It did not have such a relationship. In fact, RNA refused to accept APEX's orders. Had MediaWerks known that this representation was false, it would have never contracted with APEX and would have instead contracted with A2A to provide the supplies needed.

29. Defendants further misrepresented their ability to actually process at the RNA plant to Werkmeister, Adamic, Butler, GR8 and its brokers, Michigan, and Meijer, for which Defendants provided Werkmeister, brokers, and final end clients, pictures of final end products and data safety sheets of RNA sanitizer, when, in fact, APEX had a non-circumvention agreement with A2A, RNA, and an additional 3rd party preventing such activity. Defendants further made repeated false representations directly to Werkmeister, GR8 and its brokers, Butler, Michigan, and Meijer, related to when products could be delivered, knowing that serious issues existed with processing at the RNA plant, continually promising dates that were repeatedly pushed back and delayed.

30. MediaWerks reasonably relied on these false representations to its detriment. As a result of this reliance, MediaWerks lost substantial profits it would have made if it had simply contracted with A2A, or another producer, instead of APEX from the outset. MediaWerks and

fellow brokers would not have guided GR8, including its clients SaveOn and Office Depot, as well as Michigan, and Meijer to use APEX, had it known that 1) APEX did not have product contracts at RNA and 2) that it was prevented from producing at RNA due to the A2A NCA.  Therefore, MediaWerks lost commission not only from all the agreed upon sanitizer transactions with GR8 and its clients, Michigan, and Meijer, but also, significant, future promised business from GR8, contingent upon performance on the initial purchase order.  Further, GR8 brokers and Michigan both stated in phone calls, and emails in the case of Michigan, that they were under the impression APEX was the producer, had control over production, or existing production contracts, and was not, simply acting as a broker themselves as further evidence of APEX's widespread fraud.

31. In addition, MediaWerks seeks exemplary damages because the fraud was committed willfully and maliciously as well as its costs and pre and post-judgment interest.

## V. JURY DEMAND

Plaintiff demands a trial by jury.

## VI. PRAYER FOR RELIEF

Plaintiff prays for actual damages, exemplary damages, attorneys' fees, costs, pre and post judgment interest, and all other relief to which Plaintiff demonstrates it is entitled.

Respectfully submitted,

CAMARA & SIBLEY LLP

/s/ Joseph D. Sibley
Joseph D. Sibley
State Bar No. 24047203
sibley@camarasibley.com
Camara & Sibley LLP
4400 Post Oak Pkwy.
Suite 2700

Houston, Texas 77027
Telephone: (713) 966-6789
Fax: (713) 583-1131

**ATTORNEYS FOR PLAINTIFF**